977 F.2d 580
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Janet L. CLARK, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 92-1030.
 United States Court of Appeals, Sixth Circuit.
 Oct. 19, 1992.
 
 Before KEITH, DAVID A. NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a social security case in which the Secretary of Health and Human Services determined that the claimant, Janet L. Clark, had lost her eligibility to continue receiving disability benefits. Mrs. Clark challenged this determination in federal district court, asserting that the Secretary had made several legal errors and that there was no substantial evidence to support his decision. The district court granted summary judgment to the Secretary. We shall affirm the judgment.
 
 
 2
 * Mrs. Clark was born in July 1936. She has a ninth grade education and can read and write. She last worked in 1976 as a bookkeeper for her husband at an auto supply establishment.
 
 
 3
 Mrs. Clark had at least one episode of rheumatic fever as a child. This illness either caused or contributed to the development of aortic insufficiency and possible mitral valvular disease and left heart enlargement.
 
 
 4
 In March of 1976 Mrs. Clark filed an application for disability benefits pursuant to Title II of the Social Security Act. The Social Security Administration determined that she was entitled to an award of benefits because her rheumatic heart disease met the "Listing of Impairments." See 20 C.F.R. § 404.1520(d) (1991).
 
 
 5
 Mrs. Clark underwent an aortic valve replacement in February of 1978. Ten years later she was notified that her benefits were to be terminated. After a hearing before an Administrative Law Judge, her disability was held to have ended as of July of 1988. The Appeals Council denied a request for review, and Mrs. Clark then filed the present action to obtain judicial review of the Secretary's decision. The case was referred to a magistrate judge who issued a report and recommendation favorable to the secretary. The district court adopted the magistrate's report, and this appeal followed.
 
 II
 
 6
 The record shows that Mrs. Clark takes care of her personal needs. She performs general housework duties such as cleaning, grocery shopping, cooking, and doing the laundry, although she requires assistance to perform more substantial chores. She does not experience chest pain, but she occasionally has a "heavy feeling" in her chest and her "bones ache." She sometimes finds it difficult to relax because of her heart condition, and she experiences diarrhea or nausea when she becomes tired or upset. She sleeps five or six hours each night, and she takes Ativan and aspirin on a daily basis. According to a form filled out by a friend, Mrs. Clark also does yard work and rides a bicycle.
 
 
 7
 The administrative record incorporates evaluations made by a number of physicians. Dr. Mark Veenendaal, a cardiologist who had examined Mrs. Clark, noted on January 20, 1988, that her prosthesis was working well. Although Mrs. Clark had some shortness of breath, Dr. Veenendaal doubted that it was connected to any problem with her artificial valve. He also noted that a recent echocardiogram "looked pretty normal." Mrs. Clark underwent a cardiovascular stress test on March 16, 1988, and Dr. Veenendaal interpreted the results as being "essentially normal." On January 12, 1990, Dr. Veenendaal observed that "[i]t is gratifying that she continues to do well from a cardiac standpoint. She denies any shortness of breath, chest discomfort, palpitation, syncope or near syncope." Mrs. Clark's echocardiogram, Dr. Veenendaal said, "looked excellent."
 
 
 8
 Dr. K.P. Foley, the treating cardiologist, submitted a report on December 13, 1988, in which he stated that Mrs. Clark's prosthetic aortic valve exhibited signs of early dysfunction. Dr. Foley recommended that she avoid exerting herself and avoid working for longer than one hour. Dr. Foley also recommended that Mrs. Clark not lift over three pounds and not engage in activities that would involve prolonged sitting or standing.
 
 
 9
 On May 4, 1990, Dr. Foley indicated that he felt Mrs. Clark met the Social Security Administration's listing for rheumatic heart disease. Dr. Foley's conclusions were reinforced by those of Dr. John H. Greves. Following a physical examination of Mrs. Clark in February of 1989, Dr. Greves had indicated that he was reassured by her exercise test; he encouraged her to continue her physical activities. On September 13, 1989, however, Dr. Greves placed Mrs. Clark in "Functional Class III" on account of dyspnea, fatigue associated with enlargement of the heart, and ventricular dysrhythmia. Dr. Greves stated that an electrocardiogram was abnormal, and he concluded that Mrs. Clark was disabled.
 
 
 10
 Dr. Richard C. Bates, a physician who responded to interrogatories submitted by the Social Security Administration, stated that the objective evidence did not support Mrs. Clark's allegations of disability. To Dr. Bates the evidence indicated merely that Mrs. Clark was limited to performing medium work.
 
 
 11
 Mrs. Clark underwent a psychiatric examination on June 14, 1988. This examination was conducted at the request of the Disability Determination Service by Dr. G.A.N. Rao. Dr. Rao said that Mrs. Clark was concerned about her heart problems but did not exaggerate her symptoms. He found that she had good contact with reality, was pleasant and cooperative, and was spontaneous, logical, relevant, and articulate. However, Dr. Rao did also note that Clark complained of sleep and memory difficulties, as well as feelings of hopelessness. He diagnosed her as having secondary depression, but said it was not such as to interfere with her ability to work in a sedentary job. Dr. Rao concluded that Mrs. Clark's prognosis depended mainly on her physical problems.
 
 
 12
 At the hearing conducted by the ALJ, a vocational expert, Paul Delmar, testified that Mrs. Clark's past job as a bookkeeper should be classified as "semi-skilled." In response to a question predicated on the assumption that "[s]he's not restricted with regards to sitting or standing ... and [she is] limited to walking half a mile or less," Mr. Delmar concluded that the position of bookkeeping clerk would be an appropriate one for Mrs. Clark. If Mrs. Clark could not lift ledger books, Mr. Delmar said, she could perform similar office work in positions widely available in the State of Michigan.
 
 
 13
 The ALJ then asked Mr. Delmar whether Mrs. Clark would be able to secure employment if she had to rest two or three hours each day, as she claimed she did. Mr. Delmar responded that "it appears it would preclude competitive employment." When the ALJ asked him to "exclude from ... consideration the resting," Mr. Delmar said that he did not believe that Mrs. Clark could return to competitive employment because of the fatigue factor. In reaching this conclusion, Mr. Delmar apparently relied solely on Mrs. Clark's testimony regarding her fatigue.
 
 
 14
 The ALJ found that there was no evidence of any significant mental impairment or other nonexertional impairment or environmental restriction that would detract from Mrs. Clark's capacity to perform at least sedentary work. The ALJ stated that he had considered Dr. Foley's opinion but was not bound to accept it:
 
 
 15
 "While it is recognized that consulting physicians and medical advisor physicians who only see the medical record and do not treat the patient are not entitled to the same weight for there [sic] opinions as an attending physician, in view of this record as a whole, I discount Dr. Foley's opinion and conclude that at least sedentary work can be performed." (Emphasis added.)
 
 
 16
 The ALJ noted that Mrs. Clark's testimony "describes a daily routine which would not be incompatible with sedentary work." Her testimony of limiting symptoms was acknowledged, but the ALJ found that it was not fully credible "when viewed in light of the medical evidence and all other factors which are considered in assessing the credibility of subjective complaints." The ALJ also found that Mrs. Clark's description of daily activities, interests and general functioning level contradicted any allegation of profound or disabling depression.
 
 III
 
 17
 This court must accept the Secretary's findings if they are supported by substantial evidence. See 42 U.S.C. § 405(g). "Substantial evidence" is such evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971), and Smith-Wilkins v. Secretary of Health and Human Services, 880 F.2d 864, 865 (6th Cir.1989).
 
 
 18
 A claimant's disability benefits may be terminated if there has been any medical improvement, if the medical improvement is related to the ability to work, and if the claimant is currently able to engage in substantial gainful activity. See 20 C.F.R. § 404.1594(a) (1992). "Medical improvement" is "any decrease in the medical severity of ... impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1) (1992).
 
 
 19
 Mrs. Clark asserts that the ALJ made no effort to compare her condition at the time of the decision with her condition in May of 1976. This assertion is not well taken, as the following findings of the ALJ show:
 
 
 20
 "4. The impairment present as of May 21, 1976, the time of the most recent favorable medical decision that the claimant was disabled, was rheumatic heart disease which satisfied the requirements of Listing 4.09 of Appendix 1, Subpart P of Regulation No. 4.
 
 
 21
 5. The medical evidence establishes that there has been improvement in the claimant's medical impairment(s) since May 7, 1976."
 
 
 22
 The ALJ clearly considered Mrs. Clark's condition as of May of 1976 and concluded that it had improved since then.
 
 
 23
 Mrs. Clark notes that at one point Dr. Bates compared her present condition with her condition after her valve was replaced in April of 1978. The ALJ did not base his decision on Dr. Bates' opinion alone, however, but referred to the record as a whole as well as the opinions of Dr. Veenendaal. The record contains substantial evidence to support the finding of an improvement since 1976.
 
 
 24
 Mrs. Clark also asserts that the ALJ committed legal error by not requiring the psychiatrist, Dr. Rao, to complete a Psychiatric Review Technique form and by not indicating in the record the credentials of two doctors who did complete Psychiatric Review Technique forms. The statute, 42 U.S.C. § 421(h), does state that the Secretary must make "every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." Mrs. Clark has produced no evidence that Dr. Rao was not qualified, however. The mere fact that his credentials are not reported in the record does not justify reversal of the Secretary's decision. The failure to complete the Psychiatric Review Technique form, an adjudicatory tool, see 20 C.F.R. § 404.1520a(d) (1992), is not significant. Moreover, nothing in the record indicates that Mrs. Clark has a mental impairment. None of her treating physicians noted any mental problems or recommended psychiatric treatment. The ALJ's reliance on the report of Mrs. Clark's psychiatric interview is clearly supported by substantial evidence.
 
 
 25
 Mrs. Clark argues that the ALJ failed to develop the record adequately, as he ought to have done in view of the fact that she was not represented by counsel at the administrative hearing. But the record continued extensive medical testimony regarding Mrs. Clark's condition in 1976, 1978, and 1988, as well as intervening periods; testimony as to her daily activities, her work history, and her education; information regarding her psychiatric state; and testimony concerning her subjective feelings and perceptions. Although Mrs. Clark maintains that the ALJ did not develop various issues related to her psychiatric state, the ALJ specifically found that "[a]t the most, it might be said that she has some slight degree of secondary depression as described in Exhibit 36 but I do not find any degree of psychiatric or psychological impairment which could be expected to interfere with most work activities." (Exhibit 36 was Dr. Rao's report, which explicitly referred to Clark's sleep and memory difficulties and her feelings of hopelessness and helplessness.)
 
 
 26
 Mrs. Clark asserts next that the Secretary failed to consider the remoteness of her transferable skills. Mrs. Clark's last employment was within 15 years of the hearing before the ALJ, however--see 20 CFR § 404.1565(a) (1992), which states that the government does not "usually consider that work you did 15 years or more before the time [it is] deciding whether you are disabled."--and the ALJ was assisted by the testimony of a vocational expert who indicated that Mrs. Clark's skills from her prior work could be transferred to another occupation.[1] The vocational expert examined the administrative record and was present throughout Mrs. Clark's testimony; he was familiar with the fact that Mrs. Clark had not worked since 1976. The ALJ's finding that Mrs. Clark's skills could be transferred to a present occupation was supported by substantial evidence.
 
 
 27
 Finally, Mrs. Clark asserts that the district court erred in failing to conduct a de novo review of her objections to the magistrate judge's report and recommendation and in improperly allocating the burden of proof and failing to consider the arguments brought before it. In its order adopting the magistrate judge's report, however, the district court stated that it had reviewed the file, the report, and objections, and had made a de novo review of those portions of the report to which objections were made. The court was not obligated to discuss each of Mrs. Clark's objections independently. We have made our own de novo review, moreover, and we are satisfied that the Secretary's decision is supported by substantial evidence.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 The ALJ's use of hypotheticals in questioning the vocational expert was permissible. Answers to hypothetical questions can constitute substantial evidence. See Bradford v. Secretary of Health and Human Services, 803 F.2d 871, 874 (6th Cir.1986). The fact that the ALJ's hypotheticals did not include all of Clark's alleged problems is not dispositive. See Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir.1990)